United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 30, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 21-33531 |
| RIVERSTONE RESORT, LLC, | § § | CHAPTER 7 |
| Debtor. | § § | |
| HAMZAH ALI, | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 22-3154 |
| RIVERSTONE RESORT, LLC and AZHAR CHAUDHARY and AZHAR CHAUDHARY LAW FIRM, P.C., | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION

This memorandum opinion marks this Court's conclusion of both the main bankruptcy case of Riverstone Resort, LLC, which was dismissed the day before the first day of trial in this adversary proceeding and this adversary between Hamzah Ali, Riverstone Resort, LLC and its sole owner and member, and his law firm. However, litigation between these two parties will continue over issues which this Court is not able to resolve. The length of this opinion is unusual given the ultimate holding that the Plaintiff's claim of a constructive trust is time barred by the applicable Statue of Limitations; however, because its findings may be useful to the parties, the Court will continue at length.

### Jurisdiction

This adversary proceeding was filed on May 16, 2022. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2) and 1334(e). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). This adversary proceeding relates to the Chapter 11 bankruptcy case, *In re Riverstone Resort, LLC,* Case No. 21-33531, in the United States Bankruptcy Court for the Southern District

of Texas, Houston Division. This Court's jurisdiction exists because this adversary arose out of the bankruptcy of Riverstone Resort, LLC.

On March 20, 2023, the day prior to trial, the underlying bankruptcy proceeding was dismissed. The Fifth Circuit has previously recognized that nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case.[1] The general rule in this Circuit is that "related to" jurisdiction exists so long as the outcome of the litigation could "conceivably affect" the estate's assets or liabilities.[2] A proceeding filed after a chapter 11 bankruptcy case is closed rarely affects the assets or liabilities of an estate.[3] Further, the decision to retain jurisdiction in an adversary proceeding after the dismissal of a single asset real estate case is within the discretion of the judge.[4]

Subject matter jurisdiction is established at the commencement of a case. It is not lost due to a subsequent change in circumstances, although dismissal may be appropriate in favor of another forum.[5]

The Court specifically limits its jurisdiction in this case to the *res*[6] of the debtor, that is the real property, the subject of the single interest real estate bankruptcy case. The ownership of the real estate and the plaintiff's claims of a constructive trust against it are the main issues in this adversary. The Court does not have jurisdiction over the other claims of the non-debtor plaintiff against the non-debtor defendants, or alternatively it abstains from jurisdiction over these claims as issues for a state court determination.[7]

## The Main Bankruptcy Case 21-33531

Riverstone Resort, LLC ("Riverstone") was a single asset real estate case filed on October 29, 2021, under Chapter 11 of the United States Bankruptcy Code with scheduled liabilities of over 2 million dollars and filed claims that exceeded 3 million dollars. Neither of the other two defendants in this case, Azhar Chaudhary Law Firm, PC nor Azhar Chaudhary, were in bankruptcy proceedings and the law firm is not a co-debtor or guarantor of the debtor.

---

[1] *In re Querner,* 7 F.3d 1199 (5th Cir. 1993).)
[2] .*In re Wood,* 825 F.2d 90 (5th Cir. 1987).
[3] *See In re Bass,* 171 F.3d 1016 (5th Cir. 1999).
[4] *In re Hamlin Properties, Ltd.,* 413 B.R. 540 (Bankr. N.D. Tex. 2009).
[5] *Faulkner v. Kornman*, 2015 WL 6444955 (Bankr. S.D. Tex Oct. 23, 2015); *In re Young*, 2007 WL 1662644 (Bankr. S.D. Tex. Jun. 1, 2007).
[6] An object, subject matter, or a status against which legal proceedings have been instituted.
[7] 18-DCV-249370, *Hamzah Ali vs. Azhar Mahmood Chaudhary and Azhar Chaudhary Law Firm, P.C.* in the 458th Judicial District of Fort Bend County, Texas filed on March 6, 2018 (ECF 74-8).

Initially, this case was filed due to adverse litigation regarding its only asset with its primary lender, Prosperity Bank ("Prosperity"). Prosperity was the first lienholder on Riverstone's single asset, its real estate. The underlying debt was also unconditionally guaranteed by Azhar Chaudhary. The main bankruptcy case was a highly litigated case, and it followed additional litigation in state court that began with a default by the debtor and its guarantor of the underlying debt in early 2019. That default led to state court litigation in March of 2019, a settlement, a further default in payment and then further state court litigation. Ultimately, after rulings adverse to the debtor and guarantor in state court, the Chapter 11 bankruptcy case was filed.

In an attempt to reorganize under Chapter 11, the debtor sought to sell its single piece of real estate located at 2041 Hagerson Road, Sugar Land, Texas 77479 (the "Property"), and the Court approved the sale with a closing deadline of July 11, 2022. The Property did not sell by that date and Prosperity sought to foreclose on the Property, which the Court ultimately denied.[8] After an evidentiary hearing held on July 18, 2022, the Court found that the debtor failed to comply with court orders and failed to timely confirm a plan, converted the case to a chapter 7, and appointed Allison D. Byman as the Chapter 7 Trustee.[9] On August 24, 2022, the eve of a contested hearing in which the Trustee sought turnover of the Property and an application to employ real estate broker, the debtor's principal, Azhar Chaudhary, made payments to every creditor that filed a proof of claim in the case totaling over 3 million dollars, and the debtor requested that the chapter 7 case be dismissed as all claims were paid,[10] and an administration was no longer necessary.[11] After an evidentiary hearing, the court denied the motion to dismiss without prejudice.[12] Although Prosperity's proof of claim was paid in full, there remained a dispute with Prosperity over its payoff amount. As a result, the debtor filed a motion to reconvert the case to a chapter 11 proceeding.[13] The debtor then sought to again dismiss its case stating that all claims were paid in full, and that it was a solvent debtor.[14]

On December 15, 2023, this Court entered an Order[15] determining that as a solvent debtor, there were no reasons for a conversion to a chapter 11, nor any reason to continue with a chapter

---

[8] Case No. 21-33531, ECF No. 233
[9] Case No. 21-33531, ECF No. 144
[10] Case No. 21-33531, ECF No. 171
[11] Case No. 21-33531, ECF No. 169
[12] Case No. 21-33531, ECF No. 229
[13] Case No. 21-33531, ECF No. 226
[14] Case No. 21-33531, ECF No. 251
[15] Case No. 21-33531, ECF No. 265

7. However, the Court required payment of all administrative claims prior to the dismissal of the case. On March 20, 2023, the eve of this trial of this adversary, it was determined that debtor, Riverstone, had satisfied all its administrative claim obligations and the case was dismissed.[16] However, the Court made several bad faith findings against the debtor.[17] It also retained jurisdiction over this adversary in the dismissal order.

## The Adversary Case

The plaintiff, Hamzah Ali, brought suit on May 16, 2022, in this adversary proceeding,[18] against defendants, Riverstone Resort, LLC, Azhar Chaudhary and Azhar Chaudhary Law Firm, P.C. seeking a declaratory judgment that Riverstone's single asset is not property of the estate under 11 U.S.C.§ 541(d), and seeking to place the Property in a constructive trust for the benefit of the plaintiff. Azhar Chaudhary ("Chaudhary") is a lawyer, the sole member and owner of the debtor, Riverstone. The plaintiff, Hamzah Ali ("Ali"), is his former client. Ali claimed that Chaudhary charged an unconscionable attorney fee to him and that the funds he paid Chaudhary could be traced to the purchase of Riverstone's single asset, the Property. On June 15, 2022, plaintiff filed an amended complaint.[19]

On June 16, 2022, Riverstone filed a Motion to Dismiss by counsel David Venable under Federal Rule of Civil Procedure 12(b)(6)[20] arguing that a claim for constructive trust is not a cause of action, but an equitable remedy. Defendant/Riverstone further argued that the imposition of a constructive trust was at odds with bankruptcy principals and alleged laches as plaintiff waited from June 2017 until May 2022 to request the remedy. The same day, the motion was amended[21] to address the amended complaint.

Also on the same date, defendants, Chaudhary and Azhar Chaudhary Law Firm, P.C. filed identical motions[22] to dismiss the adversary stating that no allegations were pled against Chaudhary, individually, and that the proceeding was not a core proceeding. Further, they pled

---

[16] Case No. 21-33531, ECF No. 293
[17] Case No. 21-33531, ECF No. 285 "The … actions of the debtor are either "gamesmanship," "wrongdoing" or actions taken in "bad faith."
[18] ECF No. 1
[19] ECF No. 16
[20] ECF No. 17
[21] ECF No. 18
[22] ECF Nos. 19 and 20

that both causes of action were time barred. On July 14, 2022, this Court entered an Order[23] granting the motions to dismiss.

Thereafter, the plaintiff filed a second amended complaint,[24] which is the live pleading before this Court, alleging (1) breach of fiduciary duty by failing to provide promised legal services and retaining funds paid for those services; (2) unjust enrichment by retaining unearned funds and not placing them in a trust account, and requesting a constructive trust in favor of the plaintiff for those funds; (3) seeking a declaratory judgment under 11 U.S.C. § 541 that the Property is not property of the estate since funds were not placed in a trust account, services were not performed, and alleging that plaintiff holds equitable title; and (4) alleging constructive trust as an equitable remedy stating tracing will show plaintiff's funds were used to purchase the Property.

On August 16, 2022, defendant, Riverstone Resort, LLC, filed a motion to dismiss,[25] again through counsel David Venable. Due to the conversion of the case in the underlying bankruptcy, counsel for Riverstone, David Venable, withdrew the motion to dismiss and filed a motion to substitute attorney,[26] stating that the interest of Riverstone in the adversary was now represented by the Chapter 7 Trustee, Allison Byman.

On August 18, 2022, defendants, Chaudhary and Azhar Chaudhary Law Firm, P.C again filed identical Motions to Dismiss,[27] which the Court granted[28] in part, dismissing the declaratory judgment cause of action, and dismissing the claim for constructive trust as to defendant, Azhar Chaudhary Law Firm.

On October 11, 2022, defendant, Riverstone, filed an answer containing general denial allegations.[29] On November 7, 2022, plaintiff,[30] and defendant,[31] Riverstone, filed initial disclosures.

It was not until January 19, 2023, that defendants, Chaudhary and Azhar Chaudhary Law Firm, P.C, filed their answers to the complaint,[32] containing, amongst others, the affirmative

---

[23] ECF No. 25
[24] ECF No. 31
[25] ECF No. 33
[26] ECF No. 34
[27] ECF No.s 37 and 38
[28] ECF No. 47
[29] ECF No. 56
[30] ECF No. 58
[31] ECF No. 57
[32] ECF No. 63

defenses of limitations and laches. They also filed their Rule 26 disclosures on January 19, 2023, 72 days after the required deadline.

Thereafter, Chaudhary filed a motion for summary judgment on behalf of Riverstone,[33] while defendants' counsel filed a similar motion for summary judgment on behalf of the other two defendants.[34] The Court denied Riverstone's motion as the claims and defenses of Riverstone belonged to the Chapter 7 Trustee,[35] and denied the remaining defendants' motion based on the late and incomplete filing of their initial disclosures.[36]

On the eve of the trial, the underlying bankruptcy case was dismissed, the Chapter 7 Trustee's counsel withdrew as counsel for Riverstone,[37] and the other two defendants filed a motion contesting jurisdiction,[38] which this Court denied based on the preliminary pretrial order and the late filing of the motion.[39] Riverstone never contested jurisdiction and admitted to jurisdiction in its answer filed on October 11, 2022.[40] Chaudhary and Azhar Chaudhary Law Firm PC appealed[41] this Court's order denying the motion contesting jurisdiction to the district court. Riverstone did not appear at trial.

On the same date, March 20, 2023, defendants, Azhar Chaudhary and Chaudhary Law Firm, filed an Objection[42] to Proceeding to Trial based on the withdrawal of counsel for Riverstone Resort, made by the Chapter 7 Trustee, and lack of Riverstone's representation in the adversary proceeding. Throughout the proceedings, both in the main case and this adversary proceeding, David Venable, Sanjay Chadha, and Azhar Chaudhary filed pleadings before this Court appearing to represent the debtor, Riverstone. Chaudhary appeared for Riverstone, in the adversary, at a time when he had no authority.[43] Regardless of who appeared or did not appear for Riverstone on the day of the trial, the lawyers, witnesses, and testimony would have been no different. Mr. Venable was seen around the courtroom on the first day of the trial but failed to make an appearance. Mr. Chaudhary and Mr. Chadha both appeared in court and participated in the entire trial. All three

---

[33] ECF No. 66
[34] ECF No. 65
[35] ECF No. 72
[36] ECF No. 71
[37] ECF No. 108
[38] ECF No. 103
[39] ECF No. 107
[40] ECF No. 56, page 2.
[41] ECF No. 109
[42] ECF No. 110
[43] ECF No. 66

Venable, Chadha and Chaudhary are lawyers, all had the ability and the opportunity to present evidence and testimony during the adversary proceeding. Venable by experience and reputation is a bankruptcy specialist, Chaudhary by his own testimony handles complex litigation and testified as a witness, Chadha fully participated as counsel at trial, examining and cross-examining witnesses and presenting evidence. It appears to the Court that the claim of non-representation of Riverstone Resort was a delay tactic and a legal fiction. Additionally, the results of this adversary would have been unchanged, irrespective of their participation or not.

## Findings of Fact and Conclusions of Law

The trial in the adversary case was held over almost two days. There were two witnesses, Hamzah Ali and Azhar Chaudhary, and their testimony was wide ranging and extremely conflicting. On a preponderance of the evidence standard the Court believes the testimony of Ali significantly more than that of Chaudhary. In percentage terms, the Court believes Ali was a truthful witness at an 80% level. The Court does find at times his memory was selective, that he had exact recall for favorable facts, but his recall was less forthcoming at times of adverse testimony. However, overall, Ali was a competent and believable witness. As to Chaudhary, in percentage terms he was a truthful witness only 30% of the time. Parts of his testimony appeared fabricated, and his testimony was at times contradictory. Absent the finding that the claim of Ali to a constructive trust is time barred, this Court would have granted limited relief to Ali as described herein. The Court reluctantly holds that the Statute of Limitations bars it from doing so.

*The Unconscionable Fee*

Chaudhary was the first witness in the trial. Chaudhary claims to be a lawyer who specializes in complex civil litigation and complex immigration, although whether this is true or not is open to debate. In 2017 Ali was referred to Chaudhary by a business associate Syed Ali, who allegedly owns a title company. Ali is a real estate investor who had come into contact with Syed Ali via the title company and his real estate closings.

Syed Ali scheduled and attended the first two meetings between Chaudhary and his future client, Ali. Surprisingly, Syed Ali was not called as a witness, even though he was allegedly present during the first two meetings between Chaudhary and Ali, and his testimony could have clarified the conflicting testimony between them, the only two witnesses who were called. His testimony may have been enlightening to the Court.

Syed Ali drove Ali to the first meeting with Chaudhary and sat in during that meeting. Testimony regarding the second meeting is less clear but Syed Ali was a participant. The first meeting occurred either in late January or early February of 2017, and there were two additional meetings over the next 3 to 7 days. These meetings culminated in Ali writing three checks over time to Chaudhary or his law firm that totaled $800,000.00.[44] The first check for $150,000.00 was dated February 6, 2017. The Court finds that this is the date that Chaudhary and Ali entered into an attorney client relationship given that there was no written employment agreement. Two additional checks followed: a check for $250,000.00 on March 21, 2017, and a check for $400,000.00 on April 7, 2017. Additionally, Ali claims to have paid $35,000.00 on two other occasions to Chaudhary, $10,000.00 on February 6, 2017, by check number 1003 and $25,000.00 on May 11, 2017, by check number 1060. These checks were not introduced into evidence. However, Chaudhary in his testimony and his Affidavit[45] in support of summary judgment admitted to receiving a total of $810,000.00 from Ali. Accordingly, given the evidence before it the Court finds that Ali paid Chaudhary $810,000.00 for legal services.

There was very surprisingly no written agreement or hourly billing between the parties regarding Chaudhary's representation. Chaudhary claimed he had an oral non-refundable retainer agreement that the funds he received were earned or non-refundable when paid. Ali conversely claimed he understood that he was paying Chaudhary hourly, however, no hourly rate was apparently ever discussed between Chaudhary and Ali. Consequently, why Chaudhary was paid, what he was paid for, what he actually did, and if he should retain any of the funds advanced by Ali, was all contested between the two parties. The business and legal relationship then soured over an 8-month period leading to litigation between the lawyer and his client. Ali has filed a State Bar Complaint against Chaudhary, additionally he sued him in Texas state court, and he filed this adversary. Importantly, irrespective of whether either party's version of facts is correct, the attorney fee charged by Chaudhary was unconscionable.

Chaudhary testified that his engagement with Ali for legal services encompassed seven areas. They are noted below, and the Court will individually discuss each.

(1) The renewal of L1 Visas and applications for permanent residency of Ali and his family.

---

[44] ECF 74-1.
[45] ECF 65-9.

(2) Legal representation regarding money transferred from Arab countries [Yemen, Lebanon, UAE] to the United States.

(3) President Trumps' travel ban.

(4) Security clearance issues.

(5) Possible investigations of Ali's connections to a terrorist organization.

(6) Banking restrictions

(7) Freezing of Bank Funds.

Some further background is required before the Court discusses specifics of the alleged areas of representation. Ali is an immigrant who first came to the United States in 2013. He was born in Yemen, and was raised in Dubai, United Arab Emirates. He is married and his wife was born in Palestine but also raised in Dubai where they met. They have two children. In 2017, Ali was in the United States legally on an L1 Visa that had previously been renewed on several occasions. His immigration status, as well as the immigration status of his family, was and is understandably very important to him. He desired to immigrate to the United States, and he desired to stay here. Ultimately, he would like to become a United States' citizen. He was the second and only other witness called at trial. Ali by appearance and testimony, was a successful real estate agent and owner of real estate in Dubai and has been a successful real estate investor in the United States. His business holdings appear to be in the millions of dollars. He is not an unintelligent man.

*L1 Visa and Permanent Residence*

On February 6, 2017, the date of the beginning of Ali's representation by Chaudhary, Ali's L1 Visa had been renewed several times. Ali had previously hired an attorney Gordon Quan to represent him in this process. This process had apparently never been problematic. The Court again notes that it did not hear from Gordon Quan, who appears to currently represent Ali and his extended family in various immigration matters and that his testimony, like the testimony of Syed Ali, would possibly have been very enlightening to the Court. Ali claims that in the wake of President Trump's travel ban in 2017 he was concerned about the immigration status of himself and his family. He claims that Chaudhary misrepresented himself to Ali, made promises to Ali about obtaining legal residency that he would not and could not keep, and "fanned the flames" of his deep concerns regarding his immigration status. Additionally, Ali claims that Chaudhary

advised him that he had other deeper and serious legal concerns that only Chaudhary could resolve given his connections with governmental officials.

The Court believes in part the allegations of Ali but in order to completely adopt his testimony one must accept that Ali was totally gullible and naïve. His appearance, testimony and business acumen do not support such a holding. Yes, the Court believes that Chaudhary made promises to Ali that (a) he should not have made (b) was incapable of delivering and (3) that he actively encouraged Ali to pay him significant sums of money by preying on his immigration fears. That Ali is totally without fault, gullible and naïve, this court simply cannot adopt. Chaudhary, as shown by the evidence, did do some legal work on this issue, however, ultimately it was unsuccessful. Ali had already been represented by competent counsel, Gordon Quan. The only documentary evidence that evidences the work that Chaudhary performed is limited.[46] Most of his verbal or consulting advice to Ali was of limited or no value. He should receive compensation for his limited and unsuccessful legal work. The Court finds the value of this legal services to be $10,000.00.[47]

*Funds transferred to the United States from Arab Countries*

Ali transferred approximately 8 million dollars from Dubai to the United States to bring his business here both because these funds were needed for his visa and because he wished to permanently reside in the United States. No funds were transferred from Yemen or Lebanon by Ali. Chaudhary advised Ali that these funds were subject to being seized or frozen by the United States government. This advice was misleading and false. The funds were never at risk of being seized or frozen. If Chaudhary provided any legal services regarding this category of work, it was spurious and of no value.

*Trumps' Travel Ban*

Chaudhary advised Ali that the Trump Travel Ban would create legal difficulty for Ali and his family. Such allegations were misleading and false, they never created any issues for Ali or his immediate family. President Trump instituted a series of executive actions beginning in January of 2017, that were labeled by some as a Muslim or Arab ban. The Court can possibly envision or imagine that there was confusion especially in the Arab community regarding the scope

---

[46] Exhibit 79-1 [first three pages admitted only].
[47] Based on the testimony of Ali and what he has paid other lawyers, in Houston, Texas to perform the same legal services.

10 / 16

and effect of these executive orders. Ali may have been one of those initially confused. However, the executive actions only suspended entry to the United States [all of Ali's immediate family was already in the United States] and were never applicable to Ali's L1 Visa. Ali as stated appears intelligent, well spoken, and successful in his business dealings. While the Court will assume he may have been initially confused, long term confusion is not likely. However, and again, if Chaudhary provided legal services regarding this category of work, it was spurious and of no value.

*Security clearance issues*

The testimony regarding legal services on this issue was nonsensical. Ali never had a security clearance. Why or how Chaudhary could or would provide legal services to Ali on this topic appeared a falsehood. No legal services were provided by Chaudhary on this issue to Ali.

*Possible investigations of Ali's connections to a terrorist organization*

The testimony regarding this topic was troubling. Ali testified that Chaudhary told him that there were "red flags" from an unnamed United States governmental agency on him and that he was on a United States governmental watch list. He states that he was told that he was subject to arrest, deportation or his funds would be frozen due to these unnamed "red flags." Chaudhary also advised Ali that he was the only person who could solve his "red flag" issues and that he alone had special contacts to solve these issues. That Ali in part believed these statements is supported by the fact that over about 60 days he gave Chaudhary $800,000.00 in checks. That Ali was so gullible and naïve as to accept these allegations fully at face value, over time, takes some effort; however, the Court does find that these issues were discussed between Chaudhary and Ali. Importantly, however, the Court finds that the value of these discussions as legal advice from Chaudhary to Ali is zero. Ali was never subject to any "red flags," Chaudhary did not have any special contacts or ability to remove what were actually "red herrings."[48]

*Banking restrictions and Freezing of Bank Funds*

Ali had transferred millions of dollars from Dubai to the United States. They were the foundation of his business in the United States and extremely important to his visa process and its renewal. That he was concerned regarding any possible bank restriction of the freezing of his funds is highly likely. However, there was no evidence that Ali's funds would or could ever be frozen or that he would be subject to any banking restrictions. Chaudhary did no legal work regarding banking restrictions or the freezing of Ali's bank funds.

---

[48] A clue or piece of information that is, or is intended to be, misleading or distracting.

That Chaudhary did not earn the entire $810,000.00 attorney fee paid by Ali is evident to the Court. He did limited work for Ali with a value of $10,000.00. That Chaudhary did not have a non-refundable oral retainer agreement with Ali, his client is as he alleged is also evident.[49] Other than Chaudhary's very unreliable, fabricated testimony there is no evidence that there was ever a non-refundable oral retainer. That Chaudhary should have provided a written contract and hourly billing to Ali and refunded a sum to Ali is also evident from the evidence, the Court's findings and a totality of the circumstances. That Chaudhary violated the Code of Professional Conduct is also evident to this Court[50] and it is also evident that he charged an unconscionable fee.[51] This Court makes, based on the trial testimony these specific findings as to all of these issues but this Court is a Court of limited jurisdiction over the *res* of Riverstone, and these are State Court matters for which there is a pending state court suit. These issues should be reserved to the state court. As described herein, this Court has jurisdiction over "property of the estate" which is in effect the title or ownership of the Property which was the sole asset and the basis of the single asset Chapter 11 bankruptcy case of Riverstone Resort, LLC. All of Ali's claims, except for the constructive trust remedy he seeks herein, appear valid to this Court and therefore should be litigated in state court. However, this Court does not appear to be the proper forum for that to occur.

Accordingly, in summary, this Court, if given the opportunity, with jurisdiction to make such a ruling would rule that the value of Chaudhary's legal service between February 6, 2017, and October 25, 2017, was $10,000.00, and that Chaudhary should refund the balance of $800,000.00 to Ali. This is because he violated the Texas Rules of Professional Conduct and charged an unconscionable fee, and only did legal work with a value of $10,000.00. A refund appears appropriate given the evidence and testimony.

### Constructive Trust and the Tracing of Funds

Plaintiff, Ali, is seeking this Court to impose a constructive trust on the Property located at 2041 Hagerson Road, Sugarland Texas 77479. On or about November 8, 2016, Chaudhary; opened a small business checking account at Allegiance Bank.[52] The bank statements related to

---

[49] The Court believes any such claims are untruthful.
[50] Rule 1.04 A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.
[51] The Court has considered the factors set forth in Rule 1.04(b), specifically the time and labor performed, the fee customarily charged in the location for similar legal services, the amount involved and the lack of results obtained.
[52] Exhibit 74-2

that account reflect deposits of $150,000.00 on February 7, 2017, $250,000.00 on March 21, 2017 and $400,000.00 on April 7, 2017. These deposits are the funds, in part, paid by Ali to Chaudhary.

The closing for the purchase of the real estate that was the corpus of the Single Asset Real Estate Bankruptcy of Riverstone Resort, LLC occurred on June 28, 2017.[53] The purchase price was $2,500.000.00. It was funded by a loan of $1,856,000.00, $21,000.00 in earnest money and a $639,502.13 cash payment from Chaudhary. The allegation is that all or some of this cash payments were the funds provided by Ali to Chaudhary and his law firm.

There is a $600,000.00 domestic wire withdrawal on June 8, 2017, from the small business checking account.[54] These are the funds, in part, that purchased the Property titled in the name of Riverstone Resort, LLC. Using FIFO,[55] the funds paid by Ali to Chaudhary can be summarized as follows:

| Date | Deposits | Withdrawals | Running Balance | Notes | FIFO Accounting | |
|---|---|---|---|---|---|---|
| Beginning Balance 2/1/2017 | $ 5,153.62 | | $ 5,153.62 | | $ (1,134.40) | Funds depleted 2/24/17 |
| 2/7/2017 | $ 150,000.00 | | $ 155,153.62 | First Ali Check | $ (518,265.60) | Funds depleted 4/12/17 |
| 2/7/2017 | $ 3,500.00 | | $ 158,653.62 | | $ (514,765.60) | Funds depleted 4/12/17 |
| 2/7/2017 | | $ 788.02 | | | | |
| 2/24/2017 | | $ 5,500.00 | $ 152,365.60 | | | |
| 3/6/2017 | | $ 9,400.00 | | | | |
| 3/7/2017 | | $ 10,000.00 | | | | |
| 3/9/2017 | | $ 5,000.00 | | | | |
| 3/9/2017 | | $ 10,000.00 | $ 117,965.60 | | | |
| 3/17/2017 | | $ 10,000.00 | $ 107,965.60 | | | |
| 3/21/2017 | $ 250,000.00 | | $ 357,965.60 | Second Ali Check | $ (264,765.60) | Funds depleted 4/12/17 |
| 3/30/2017 | $ 600,000.00 | | $ 957,965.60 | Chaudhrey Bank Loan | $ 216,519.40 | Chaudhrey Funds available for purchase of Riverstone |
| 4/3/2017 | | $ 25,000.00 | $ 932,965.60 | | | |
| 4/7/2017 | $ 400,000.00 | | $ 1,332,965.60 | Third Ali Check | $ 383,480.60 | Ali Funds used for purchas of Riverstone |
| 4/10/2017 | | $ 30,000.00 | | | | |
| 4/11/2017 | | $ 10,000.00 | | | | |
| 4/12/2017 | | $ 560,000.00 | | | | |
| 4/12/2017 | | $ 15.00 | | | | |
| 4/12/2017 | | $ 10,000.00 | $ 722,950.60 | | | |
| 4/18/2017 | $ 5,500.00 | | $ 728,450.60 | | | |
| 4/18/2017 | | $ 7,500.00 | | | | |
| 4/20/2017 | | $ 20,000.00 | $ 700,950.60 | | | |
| 5/3/2017 | | $ 10,000.00 | | | | |
| 5/4/2017 | | $ 25,000.00 | | | | |
| 5/9/2017 | | $ 10,000.00 | | | | |
| 5/12/2017 | | $ 1,000.00 | | | | |
| 5/22/2017 | | $ 5,200.00 | $ 649,750.60 | | | |
| 6/5/2017 | | $ 10,000.00 | | | | |
| 6/5/2017 | | $ 10,000.00 | | | | |
| 6/8/2017 | | $ 10,000.00 | $ 619,750.60 | | | |
| 6/8/2017 | | $ 600,000.00 | $ 19,750.60 | Riverstone Resort purchase funds | | |

Accordingly, the Court holds that, based on tracing and a FIFO accounting, $383,480.60 of the purchase price of the Property was paid by the funds of Ali. The purchase price of the Property was $2,500,000.00.[56] If given the opportunity this Court would award a .15339[57] interest

---

[53] ECF No. 74-6
[54] ECF 74-2, page 15.
[55] "First In First Out"
[56] ECF 74-6.
[57] $383,480.60/$2,500,000.00

in the Property to Ali. Before utilizing the application of the Statute of Limitations, there was clear and convincing evidence to find that there was a breach of fiduciary duty or actual fraud between Chaudhary and Ali, unjust enrichment to Chaudhary and that the tracing[58] of Ali's funds via Chaudhary, in part, lead to the partial purchase of the *res*, that is the only asset of Riverstone Resort, LLC, its single piece of real estate, which was property of the estate of the debtor.[59]

### Constructive Trust – Limitations

In an effort to recover his money, Plaintiff filed suit[60] styled as *Hamzah Ali vs. Azhar Mahmood Chaudhary and Azhar Chaudhary Law Firm, P.C.* against the two co-defendants in the 458th Judicial District of Fort Bend County, Texas on March 6, 2018. The same facts give rise to the state court suit and this litigation, but the causes of action are different. In the state court suit, plaintiff pled causes of action for breach of contract, quantum meruit, breach of fiduciary duty, fraud, negligence, gross negligence, and asserted actual damages. In the state court litigation, Ali failed to seek the imposition of a constructive trust. Plaintiff amended the complaint in the state court litigation on June 26, 2018[61] to include an additional cause of action of breach of settlement agreement, again failing to include a cause of action seeking imposition of constructive trust. Had the state court litigation been amended to include the imposition of a constructive trust as a cause of action, the statute of limitations may have been tolled.[62] However, this did not occur, and the imposition of a constructive trust was not raised until after the limitation period when this adversary was filed.

---

[58] *In re Bentley*, 622 BR 296 (Bankr. W.D. OK 2020) (Several methods of tracing exist, none of which perfectly address every situation; consequently, courts must exercise their discretion "to select the method best suited to achieve a fair and equitable result on the facts before them." *Henshaw*, 388 F.3d at 739–40, 749 (citing William Stoddard, Note, Tracing Principles in Revised Article 9 § 9–315(B)(2): A Matter of Careless Drafting, or an Invitation to Creative Lawyering, 3 Nev. L.J. 135, 135 (Fall 2002)). The most commonly used methods of tracing are: the lowest intermediate balance test ("LIBT"); the percentage or pro rata approach; and the first in, first out method ("FIFO"). *Tydings*, 2020 WL 1510025. Here the Court would have applied "FIFO" to any tracing required.

[59] *In re Monnig's Dep't Stores*, 929 F.2d at 201; see also *Rosenberg v. Collins*, 624 F.2d 659, 663 (5th Cir.1980) (holding that, under Texas law, a constructive trust can attach only "to some identifiable property which can be traced back to the original property acquired by fraud").

[60] ECF No. 74-8

[61] ECF No. 65-1

[62] "Equitable tolling may delay accrual of a cause of action where a claimant pursued his judicial remedies but filed a defective pleading during the statutory period." *Epps v. Fowler*, 351 S.W.3d 862, 869 n. 8 (Tex. 2011).

Under Texas law, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.[63] A constructive trust has long been used as a remedy for unjust enrichment obtained from a fiduciary's breach of duty. The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship.[64] A claim for constructive trust under Texas law requires the establishment of three elements: (1) breach of a fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res.[65]

Upon review of the testimony heard and evidence presented, it is clear to the Court that a fiduciary relationship was breached. An attorney-client relationship was established between the parties. In Texas, "[f]iduciary duties arise as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships."[66] Here, it is undisputed that an attorney-client relationship existed. The Court finds inexplicably that Chaudhary breached his duty by failing to perform and charging an unconscionable fee. Further, it is clear that Chaudhary was unjustly enriched. Finally, it is clear to the Court through tracing that the funds lead to the partial purchase of the Property, and only asset of the debtor, Riverstone Resort, LLC.

As a claim for remedial relief, the limitations period to be applied must be determined with reference to the theory on which a constructive trust is sought.[67] In Texas, actions for breach of fiduciary duty are governed by a four-year statute of limitations.[68] Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury.[69]

In the instant case, plaintiff Ali seeks to have a constructive trust imposed on the Property based upon claims of unjust enrichment and breach of fiduciary duty. In the state of Texas, claims for unjust enrichment have a statute of limitations of two years, and claims of breach of fiduciary duty have a statute of limitations of four years. Here, the statute of limitations began on October 26, 2017, as testified to repeatedly by Ali. The termination of representation occurred on October

---

[63] *Ellisor v. Ellisor,* 630 S.W.2d 746, 748 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Lowther v. Lowther,* 578 S.W.2d 560, 562 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *see also Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dep't Stores, Inc.),* 929 F.2d 197, 201 (5th Cir.1991) (applying Texas law).
[64] *Meadows v. Bierschwale,* 516 S.W.2d 125, 128 (Tex.1974)
[65] *In re Monnig's Dep't Stores, supra* at 201; *see also Rosenberg v. Collins,* 624 F.2d 659, 663 (5th Cir.1980).
[66] *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998).
[67] *Pemex Exploracion y Produccion v. BASF Corp.*, No. H-10-1997, 2013 U.S. Dist. LEXIS 144166, at *34 (S.D. Tex. Sep. 30, 2013).
[68] Tex. Civ. Prac. & Rem. Code § 16.004(a)(5).
[69] *Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015).

26, 2017. Immediately Ali reobtained Mr. Gordon Quan for assistance with his immigration matters, who Ali referred to as "one of the best lawyers in the country." It was through Mr. Quan, that Ali learned that what he had been told by Chaudhary, regarding almost everything was misleading or false. The underlying claim of breach of fiduciary duty began tolling on the date Ali discovered the breach of fiduciary duty, and expired on October 25, 2021, a date which predates both the bankruptcy case from which this action stemmed, and this adversary proceeding.

In reluctance, this Court holds that the imposition of a constructive trust is denied based upon the Statute of Limitations, which expired on October 25, 2021. The running of limitations renders the claim against Riverstone as unenforceable.[70]

The Court therefore issues a take nothing judgment to Hamzah Ali but only on his claim of a constructive trust as to Riverstone Resort, LLC. Any other requested relief against non-debtor parties shall be determined by a state court of competent jurisdiction. All additional claims in this adversary, not adjudicated herein, are also reserved for the state court.

**SO ORDERED.**

SIGNED 03/30/2023

Jeffrey Norman
United States Bankruptcy Judge

---

[70] 11 U.S.C. 558 (the estate shall have the benefit of any defense including statutes of limitation).